IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KENNETH HANON | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv509 |
| SMITH COUNTY SHERIFF'S DEPT., ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Kenneth Hanon, previously an inmate confined in the Smith County Jail, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on November 1, 2007. The Plaintiff complained about the medical care he received for hypertension and diabetes. On February 15, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Nurse Marie Taylor and Chief Gary Pinkerton testified on behalf of the Defendants. Documentary evidence, including the Plaintiff's jail and medical records, were also admitted into evidence.

1

The Plaintiff testified that he has hypertension and diabetes. He was confined in the Smith County Jail on July 6, 2007. During intake, he notified a jail employee about his medical condition, but he did not see medical personnel. A week passed and he still had not seen medical personnel. He filed a grievance but received no response. On August 8, 2007, he submitted a grievance to the Medical Department and was told that he needed to submit a sick call request. He then filed a medical request and was told that he would receive a diabetic tray. The Plaintiff initially testified that he never received the particular medication he had been prescribed before he was incarcerated, although he subsequently testified that he started receiving his diabetes medication shortly before he was released from jail. He remained in the jail for 109 days. His blood pressure was high, and he experienced headaches. He acknowledged that he received blood pressure medication, but he added that it was the wrong medication and that it did not seem to help very much. The nurse told him that the doctor did not approve his request for specific medication. The doctor also prescribed him insulin. The Plaintiff testified that he was not insulin dependent and that all he needed was his diabetes pill, Glucovance. He added that he did not want to begin taking insulin since he feared that it would cause him to become insulin dependent.

The Plaintiff testified that the failure to provide him with the correct medication had the potential to make his body deteriorate, and he believes that he has experienced organ damage. The dosages he is receiving now are higher than they were before he was incarcerated. He attributes that development to the failure of the Defendants to give him the correct medication. He testified that he has sued Smith County and the Smith County Sheriff's Department because they are responsible for the medical care he received. He added that he sued the Sheriff's Department because they did not respond to his grievances. He sued Correctional Healthcare Management because it had the

contract to provide medical care to Smith County Jail inmates. He sued Dr. Tyner because he was the person who prescribed the medication that was given to him. He also sued Dr. Tyner for placing an entry in his medical records that he was suicidal, when he was not suicidal, and then Dr. Tyner failed to treat him for being suicidal after he made the entry in the records.

The Plaintiff testified that the Defendants were deliberately indifferent in that they denied him medication. They had the medication he needed, but he was denied the medication because Dr. Tyner would not prescribe it. He acknowledged that doctors may differ in opinion as to what medication should be prescribed.

When questioned by the Defendants, the Plaintiff questioned the accuracy of the jail records that were submitted into evidence. He noted that many of the records do not have his signature on them, and he argued that the records could be fabricated. When shown the hypertension records, he again testified that he did not know whether they were accurate. He acknowledged that the records show that his blood pressure went down from 246/131 on July 13, 2007. It is noted that the records show that his blood pressure was 152/83 on September 8, 2007. The Plaintiff testified that his blood pressure was still too high. The records listed his blood pressure medication as Norvasc, Atenolol, Lisinoprol, HCTZ and Clonidine. The diabetes medication eventually provided was Metformin, which is one of two drugs in Glucovance. The Plaintiff also complained about the timing of blood tests and the dispensing of insulin. Medical personnel wanted to give him blood tests after he had eaten, instead, of having readings after he had fasted. They also wanted him to take insulin before he had eaten, instead, of giving him insulin after meals. He testified that he refused to take the treatment made available for his diabetes when insulin was offered.

Marie Taylor, a registered nurse, was the first witness called by the Defendants. She is the administrator for the medical care provided to Smith County Jail inmates by Correctional Healthcare Management. She testified that she came into contact with the Plaintiff and that he was a hypertension and diabetes patient. She noted that the Plaintiff was always hostile and angry, which would have elevated both his blood sugar levels and his blood pressure. She testified that the nurses employed at the jail are obligated to follow protocols. They have protocols for providing medical care for hypertension and diabetes. Nurse Taylor testified that the Plaintiff did not like the protocols, but the doctor instructed medical personnel to follow the protocols. The protocol for Type 2 diabetes called for insulin when blood sugar levels were above a certain point and that oral medication could be used when blood sugar levels were lower. Under these protocols, the Plaintiff should have been treated with insulin. Nurse Taylor testified that the Plaintiff's blood pressure was routinely taken and that medication was provided in an effort to take care of him.

Chief Gary Pinkerton, the administrator of the Smith County Jail, testified that Smith County has a contract with Correctional Healthcare Management to provide medical care to inmates. A copy of the Health Services Agreement was included in the documentary evidence. Chief Pinkerton stated that he answers grievances that are addressed to him. He testified that the records make it appear that the Plaintiff received proper medical care. Chief Pinkerton testified that neither Smith County nor the Smith County Sheriff's Department has a custom or practice of being deliberately indifferent to the medical needs of jail inmates. He testified that the Plaintiff's blood pressure readings showed a decline while he was confined in the jail, although he could not say if the Plaintiff's blood pressure was considered high at the time of his release.

Discussion and Analysis

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute

deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The Fifth Circuit has repeatedly held that a disagreement with the medical treatment prescribed by a doctor does not rise to the level of a constitutional violation. *See, e.g., Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). A court may consider the medical records presented at a *Spears* hearing to determine that the quality or nature of medical treatment did not amount to deliberate indifference. *Varnado v. Collins*, 920 F.2d 320 (5th Cir. 1991).

In the present case, it is clear that the Plaintiff received extensive medical care. Dr. Tyner issued instructions regarding the medication to be provided to the Plaintiff for both hypertension and diabetes. The crux of the Plaintiff's lawsuit is that he disagreed with the treatment offered or made available to him by Dr. Tyner, however, his disagreement does not give rise to a constitutional claim. The Plaintiff also complained about delays in receiving medical care, but a delay in medical care violates the Constitution only if it is due to deliberate indifference and the delay results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Plaintiff has not alleged facts satisfying this criteria. The medical claims should be dismissed.

The claims against Smith County and the Smith County Sheriff's Department should additionally be dismissed for a second reason. The Plaintiff testified that he sued them because they were responsible for the medical care he received. The doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). They will not be liable just because the Plaintiff was confined in the Smith County Jail if his constitutional rights were violated while confined there. "Instead, it is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In *Board of County Comm'rs of Bryan County v. Brown*, the Supreme Court noted that the line of cases starting with *Monell* require that a "plaintiff seeking to impose municipal liability under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." 520 U.S. 397, 403 (1997). The Supreme Court went on to discuss the concepts of a "policy" and "custom" as follows:

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 403-04 (citations omitted). A "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. In cases where a "plaintiff is seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. . . . A showing of simple or even heightened negligence will not suffice." *Id.* at 406-407 (citations omitted). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* at 410. To satisfy the deliberate indifference prong, a plaintiff must ordinarily shown a pattern of violations. *Estate of Davis ex re. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

In the present case, the Plaintiff has not shown that his constitutional rights were violated. He likewise failed to show that his constitutional rights were violated due to a custom or policy of Smith County or the Smith County Sheriff's Department. He has not alleged facts showing that they may be liable.

In conclusion, the Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 22nd day of February, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE